Dorothy A. WILEMAN, Plaintiff,

v.

Anthony M. FRANK, Defendant.

Civ. A. No. R–89–682.

United States District Court,
D. Maryland.

Dec. 10, 1991.

## MEMORANDUM AND ORDER

RAMSEY, District Judge.

Pending before the Court in the above-captioned case is plaintiff's motion for attorneys' fees and costs. This motion was fully briefed by the parties pursuant to Local Rule 109 (D.Md.1989), and supplemental memoranda were filed in response to this Court's letter order of August 20, 1991. Pursuant to Local Rule 105, subd. 6 (D.Md.1989), the Court will rule without a hearing.

### PROCEDURAL HISTORY

This action was brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., to redress the effects of alleged sex and race discrimination against the plaintiff by the United States Postal Service. By Memorandum and Order dated June 13, 1991, the Court entered judgment in favor of the plaintiff on the sex discrimination claim, and against her on the race discrimination claim. Under 42 U.S.C. § 2000e–5(k), the Court, "in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs...." The Court therefore ordered the defendant to pay plaintiff's attorney's fees upon motion and approval.

Plaintiff then submitted a motion for fees, requesting a total award of $166,-165.00 in fees and $4,112.39 in costs. Thereafter, the Court ordered further briefing on (1) the portion of plaintiff's attorney's fees attributable to the race discrimination claim, and (2) the application to this case of the 12 factor rubric set forth in E.E.O.C. v. Service News Co., 898 F.2d 958 (4th Cir.1990).[1]

### ANALYSIS

▮▮▮ Under Service News, the District Court is to consider the twelve Johnson factors in arriving at (1) a reasonable hourly rate and (2) a reasonable number of hours. These figures are then multiplied to determine the "lodestar" figure. Absent circumstances warranting adjustment, this "lodestar" represents the proper total fee award. See Blum v. Stenson, 465 U.S. 886, 888, 104 S.Ct. 1541, 1543–44, 79 L.Ed.2d 891 (1984). The party seeking fees always has the burden of proof with respect to these components of the award. Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

### A. Number of hours

The first Johnson factor requires the Court to consider the time and labor expended in litigating the case. The Court has thoroughly reviewed the detailed billing records for each attorney, and makes the following findings.

Plaintiff was represented by two law firms in this matter. During the administrative stage, she retained the firm of Patton, Boggs & Blow ("PBB"). PBB represented the plaintiff at a hearing before an administrative law judge, prepared a post-hearing brief, appealed the case before the EEOC, and participated in preparing the complaint in the civil action. Declaration of Deborah Lodge, Ex. 4. PBB reported a total of 89 attorney hours spent on the case by two attorneys at billing rates of $140–$190 per hour. In addition, PBB reported 1 hour of law clerk time and one hour of legal assistant time. The fees and costs

---

1. In Service News, the Fourth Circuit reaffirmed its holding that the twelve factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974) govern attorneys' fee awards in Title VII cases. These include: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. See also Mammano v. Pittston Co., 792 F.2d 1242 (4th Cir.1986) (Court's discretion is narrowly limited, and fee award must be based on a discussion of the Johnson factors.)

for the representation by PBB total $13,-460.36.[2]

■ In 1989, this Court appointed Francis Laws and Joseph Snee, Jr. of the Baltimore firm of Venable, Baetjer & Howard ("VBH") to represent plaintiff in the civil action. From 1989 to 1991, VBH reported a total of 1120.6 attorney hours spent on research, discovery, trial preparation, and trial. The billing statements indicate that these hours were divided among attorneys of the firm as follows:

| Attorney | Hours |
| --- | --- |
| Laws | 652.6 |
| Snee | 309.1 |
| Powell | 6.0 |
| Shopner | 14.6 |
| Silva | 12.6 |
| Cranston | 52.6 |
| Chatman | 70.1 |
| Wellington | 3.0 |

Laws, who billed over half of the total hours claimed, is a partner in VBH's labor and employment law department, with almost 10 years experience in employment litigation. Laws' billing rate to private clients during the period from 1989 to 1991 ranged between $145 and $160 per hour.[3] Snee is an associate in the litigation department, with six years litigation experience, but no specific Title VII experience. His billing rate during the relevant period ranged from $90 to $100 per hour. The remaining attorneys are junior associates in the litigation and labor law departments whose rates ranged from $90 to $115 per hour. In addition, VBH reported 203.1

hours worked by legal assistants whose rates ranged from $45 to $90 per hour.[4]

It is the opinion of the Court, based on the billing statements submitted, the Court's own assessment of the manner in which both sides conducted the litigation, and the end results, that the number of hours set forth by the plaintiff is essentially reasonable. As the Supreme Court noted in *Hensley*, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally, this will encompass all hours reasonably expended on the litigation ..." *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940. Still, defendant raises several specific objections to the number of hours billed which deserve consideration.

Defendant's challenges to plaintiff's computation of the number of hours spent fall into three basic categories. First, defendant objects to the number of hours spent on legal research as excessive. Second, he argues that hours expended on the race discrimination claim should be excluded from the lodestar calculation. Finally, he attacks certain items as duplicative or otherwise facially improper.

*Reasonableness of research time.*

■ Plaintiff's billing statements report roughly 177 hours spent on research over the course of the representation. In his supplemental opposition, the defendant maintains that this is an "excessive" figure, and arbitrarily suggests that it be reduced to 50 hours. After considering the appropriate *Johnson* factors, the Court concludes that such a reduction would be inappropriate in this case.[5]

**2.** Although PBB was not counsel of record at the time of trial, its services plainly contributed to plaintiff's success in the lawsuit. Plaintiff is therefore entitled to have PBB's fees considered in the calculation of the total award. *See Service News*, 898 F.2d at 965.

**3.** Plaintiff's motion for attorneys' fees assigns a value to each attorney's services equal to that attorney's normal billing rate.

**4.** Of over 200 hours of legal assistant time, only .5 hours were billed at the $90 rate. Still, defendant's attack on the time spent by legal assistants focuses almost entirely on the issue of the appropriate rate for this half hour. This is characteristic of the manner in which the defendant litigated this case. Nonetheless, the

Court agrees with defendant that $90 per hour is an inappropriate rate for an errand to the courthouse, and will reduce the rate to the $50/hour charged by the other legal assistants in 1990. Accordingly, the ultimate award will be reduced by the sum of $20.00.

**5.** The *Johnson* factors reflect the considerations which are generally relevant in computing the figures used to determine the lodestar. But the factors are not always readily reduced to a series of isolated inquiries—a number of them may influence the Court's judgment on any given issue. The Court notes that its conclusions with respect to "excessive" research time are based primarily on *Johnson* factors (1), (2), (6), and (9).

VBH is a large firm, with a large labor and employment law practice. VBH asserts, and the Court finds, that the firm was able to draw on experience and prior research from its extensive background to minimize unnecessary and inefficient research time. However it is impossible, in a case as complex as this, for an attorney to adequately represent a client without conducting substantial research. Court-appointed attorneys in civil rights cases are expected to prepare their legal theories as carefully and creatively as those retained by private clients. Where the movant has satisfied the Court that experienced, skilled counsel have conducted relevant legal research in good faith, the number of allowable hours in the lodestar computation will not be reduced absent a showing of specific grounds, which do not exist here.[6]

*The race discrimination claim.*

Defendant interprets the plaintiff's billing statements as reporting 110 hours spent on preparation of the pretrial memorandum. He argues that this figure should also be reduced to 50 hours, "to account for effort expended on the race claim and excessive time generally." The basis for this suggestion appears to be simply that approximately one half of the pretrial memorandum was devoted to the race discrimination issue, on which the defendant prevailed. The defendant further argues for an overall reduction of 35% of the total hours expended in the case in order to account for time spent on the race discrimination claim.

■ Because the Court did find for the defendant on the race discrimination issue, the question arises to what extent the plaintiff, as a prevailing party, is entitled to compensation for fees expended in pursuing this unsuccessful component of her case. The Fourth Circuit has recently provided guidance on this issue in *Plyler v. Evatt*, 902 F.2d 273 (4th Cir.1990). In general, where two claims in the same overall litigation involve issues that are "distinctly

different from" one another, they should be treated as separate lawsuits for purposes of the fee award. *Id.* at 280, citing *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). But as Judge Phillips pointed out in *Plyler*, "[t]he Supreme Court has directed district courts not to draw overly fine distinctions in making this determination." *Id.* The resulting test in this Circuit is that claims involving the same "common core of facts or related legal theories" should be treated together and evaluated in light of " 'the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.' " *Id.*, citing *Hensley*. Under this test, a district court is not required to disallow hours spent on an unsuccessful claim unless it clearly appears that those hours were unrelated to the claim on which the plaintiff prevailed. After considering this case in light of *Plyler*, the Court is of the opinion that neither reduction sought by the defendant would reflect the proper effect of the unsuccessful race discrimination claim on the fee award.

The race discrimination claim attacked the promotion of Charles Coger, a black male. The sex discrimination claim attacked the promotion both of Mr. Coger, and of William Wilderson, a white male. Plaintiff's victory was based in part on the Court's finding that Coger's promotion was the result of gender based discrimination. The attorney effort aimed at developing the facts surrounding Coger's promotion, therefore, addressed both claims and contributed to the plaintiff's overall success.[7] To this extent, the two claims shared a common core of facts, and should be examined together under *Plyler*.

The essence of the race discrimination claim was plaintiff's contention that the defendant had promoted Mr. Coger in settlement of certain EEO claims he had filed, and that such a promotion constituted illegal discrimination against the plaintiff.

6. Of course, the appropriate rate attributable to any allowable hours requires separate consideration.

7. The defendant concedes that substantial portions of the discovery time were devoted to

portions of the claims which were factually related. Defendant's Response at 6.

Because plaintiff's arguments concerning the settlement agreement had no bearing on her claim that Coger's promotion also constituted sex discrimination, it is possible to clearly identify a portion of the race discrimination claim which is "distinctly different" from the successful sex discrimination claim. Attorneys' fees for work relating to the settlement agreement should therefore be disallowed.

Plaintiff suggests that the following hours are attributable to work relating to the settlement agreement.

| Attorney | Hours | Description | Fee |
|---|---|---|---|
| Chatman | 70.1 | research | 6,600.00 |
| Laws | 15.0 | research | 2,250.00 |
| Laws | 2.0 | prepare questions | 300.00 |
| Laws | 1.0 | examination | 150.00 |
| Snee | 1.0 | examination | 100.00 |
| Shopner | 3.0 | research | 345.00 |
| Shotto (legal assistant) | | trial | 60.00 |

The Court finds that plaintiff's proposed reduction is reasonable, and accurately reflects the time spent focused on the settlement agreement. Accordingly, the ultimate award will be reduced by $9,805.00.

Viewing the remaining reported hours in light of the overall relief awarded to the plaintiff, the Court is of the opinion that no additional reduction on account of the unsuccessful race discrimination claim is appropriate. As a result of this lawsuit, plaintiff was granted complete relief, including a retroactive promotion and backpay. While defendant argues that the fees are excessive when compared to the estimated $15,000 value of the backpay, the Court notes that the promotion will also result in prospective benefits to the plaintiff in the form of higher salaries.

Moreover, the significance of the relief obtained in this case, as in most Title VII cases, is much greater than the mere value of the monetary award. By providing the courts with broad equitable power, Title VII itself reflects an understanding that monetary relief alone rarely makes victims of discrimination whole. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975). The Court exercised this equitable power in awarding plaintiff the promotion, aware that the intangible effects of a promotion can far outweigh the increase in salary. Through the efforts of her attorneys, plaintiff received the most complete relief possible, and the Court finds that *Johnson* factor (8) weighs heavily in favor of allowing the majority of the reported hours in the lodestar computation.

*Duplicative billing.*

Defendant argues that plaintiff's application requests duplicative fees, in that both Mr. Laws and Mr. Snee billed for attendance at certain depositions and at trial. Defendant also objects to any award of fees based on hours reported by Ms. Shotto, a legal assistant, for time spent at the trial. The Court rejects both of these arguments.

Defendant cites *Daly v. Hill*, 790 F.2d 1071, 1079–80 (4th Cir.1986), for the proposition that "courts do not typically allow compensation for two attorneys in cases such as this involving one plaintiff and a central transaction." Defendant's Response at 7. In *Daly*, the Fourth Circuit simply declined to hold that a district court's refusal to compensate two attorneys constituted abuse of discretion. The Court pointed out, however, that the question was one for which the district court is primarily responsible, "because it is in a better position to evaluate the quality and value of the attorney's efforts." *Id.* at 1079, quoting *Ballard v. Schweiker*, 724

F.2d 1094, 1098 (4th Cir.1984). Having observed the caliber of representation provided by VBH, and the manner in which the defendant litigated, the Court concludes that VBH's decision to staff depositions and trial in this manner was entirely appropriate.

■ Defendant also objects to certain of the reported hours on the grounds that they represent nothing more than clerical work, and that it is improper to bill at an attorney's rate for clerical work simply because an attorney performs it. While the Court agrees with this general principal, it notes that several of the billing items cited by defendant as reporting clerical work in fact describe activities such as drafting and preparing exhibits. Of all of the items objected to on this ground, the Court finds that only 1.2 hours of associate time clearly appear to be billed for clerical work. Accordingly, the ultimate award will be reduced by $50.00.

■ Finally, defendant correctly points out that the fees generated by PBB include $295.49 for secretarial, overtime, and word processing charges. The Court agrees with the defendant that it would be inappropriate to award these items, and will reduce the award by the full $295.49.

*B. Reasonable rate*

As noted above, plaintiff has set forth each attorney's normal billing rate as the appropriate rate for purposes of the lodestar calculation. Plaintiff has supported her contention that these rates are reasonable through affidavits of the individual attorneys, as well as affidavits of other attorneys in the Baltimore community and a published list of attorneys' rates at various law firms in Baltimore. Defendant argues that plaintiff has failed to meet her burden of proof, and suggests that the Court impose certain arbitrary reductions of each attorney's customary rate.

In deciding which rates to use for purposes of this calculation, the Court is guided by the Supreme Court's opinion in *Blum, supra.* There, the Court stated that

In seeking some basis for a standard, courts properly have required prevailing attorneys to justify the reasonableness of the requested rate or rates. To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to—for convenience—as the prevailing market rate.

*Blum,* 465 U.S. at 896, n. 11, 104 S.Ct. at 1547, n. 11. This statement guides the Court in its consideration of *Johnson* factor (5).

■ The Court finds that the hourly rates set forth by the plaintiff for each of the attorneys are well within the range of prevailing rates in the Baltimore area for private attorneys of comparable skill, experience, and reputation. In light of the remaining relevant *Johnson* factors, the Court concludes that it is appropriate to compute the lodestar by multiplying (a) the hours expended in each year by (b) the rates submitted by the plaintiff for each attorney in that year.

The plaintiff in this case faced a stiff burden of proof, and required the services of highly skilled attorneys in order to prevail. This case was as complex and difficult as those faced by attorneys in private practice charging market rates, and plaintiff's attorneys prevailed in the face of the opposition of a powerful adversary with nearly unlimited resources. *Johnson* factors (2) and (3) therefore weigh in favor of using the plaintiff's proposed rates.

The attorneys at VBH and PBB who represented the plaintiff in this case each possess the experience and ability to command the plaintiff's proposed rates in private practice. Because the plaintiff has established that the rates are within the appropriate range, the Court finds that factor (9) presents no basis for departure.

The *Hensley* Court held that a highly successful plaintiff's attorney is entitled to a "fully compensatory fee." Further, the attorneys' opportunity costs in *Johnson* factor (4) are based on their private billing rates. In light of these considerations, it would be difficult to justify the use of any rate other than the attorneys' normal billing rates in this case.

Finally, *Johnson* factor (12) requires the Court to consider fee awards in similar cases. The Court finds the amount of fee award in this case to be consistent with awards in other recently reported cases. For example, in *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565 (5th Cir.1989), *cert. denied*, 493 U.S. 1019, 110 S.Ct. 718, 107 L.Ed.2d 738 (1990), the Court affirmed an award of $134,021.15 in a case involving an individual plaintiff who received complete relief, even though he was not successful on all of his claims. The defendant in that case raised substantially the same objections as has the defendant here.

### C. Adjustments to the lodestar

Had the Court allowed all hours initially claimed by the plaintiff, the lodestar would equal $166,165.00. Because the Court has approved plaintiff's proposed billing rates in their entirety, all that remains is to reduce the above figure by the amounts noted throughout this memorandum. The total reduction is calculated as follows:

| Reduction | Amount |
| --- | --- |
| Legal assistant time | 20.00 |
| Race discrimination claim | 9,505.00 |
| Clerical billings | 50.00 |
| Secretarial charges (PBB) | 295.49 |
| | |
| Total reduction | 10,170.49 |

The final fee award, therefore, is $155,994.51.

Accordingly, it is this 10th day of December, 1991, by the United States District Court for the District of Maryland,

ORDERED:

That the defendant shall pay to the plaintiff the sum of $155,944.51 in attorneys' fees, and $4112.39 in costs.