Zepora CERTAIN, Plaintiff,

v.

John E. POTTER, Postmaster General,
United States Postal Service,
Defendant.

No. 1:02CV00182.

United States District Court,
M.D. North Carolina.

Aug. 4, 2004.

Thomas Barstow Kobrin, Greensboro, NC, for Plaintiff.

Gill P. Beck, Lynne P. Klauer, Office of U. S. Attorney, Greensboro, NC, Suzanne Bohannon McCabe, U.S.P.C. Law Department, Philadelphia, PA, for Defendant.

## MEMORANDUM OPINION

BEATY, District Judge.

## I. INTRODUCTION

This matter comes before the Court on Plaintiff Zepora Certain's ("Plaintiff" or "Certain") Motion for Attorney Fees and Costs [Document # 52] against Defendant John E. Potter, Postmaster General of the United States Postal Service ("Defendant" or "Postal Service"). Plaintiff seeks to obtain attorney's fees and costs with respect to a Judgment upon Jury Verdict [Document # 49] entered on November 3, 2003, against Defendant on Plaintiff's claims of retaliation and hostile work environment. For the reasons discussed below, Plaintiff's Motion is granted in part.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY [1]

The controversy between Plaintiff and Defendant began in February 1999 when Plaintiff's supervisor, Brian McCullough, began harassing Plaintiff on the basis of her color and/or sex. After Plaintiff reported this harassment to the Postal Service in May 1999, the Postal Service investigated Plaintiff's claims of harassment and found them to be without merit. Plaintiff alleged that on approximately September 1, 1999, Defendant retaliated against her by changing her job duties and reducing her pay. Plaintiff then pursued her claims of hostile work environment and retaliation through the Postal Service's required administrative processes, but on October 31, 2001, EEOC Administrative Law Judge Anita Foye found in favor of the Postal Service on Plaintiff's claims. Plaintiff timely filed suit in this Court on March 11, 2002, bringing Title VII claims against the Postal Service for harassment on the basis of color and gender resulting in a hostile work environment and for retaliating against Plaintiff for engaging in protected activity. As part of her Title VII claims against Defendant, Plaintiff alleged that Defendant constructively discharged her. In addition to her Title VII claims against the Postal Service, Plaintiff also brought state-law claims against the Postal Service for intentional and negligent infliction of emotional distress.[2]

On October 16, 2003, the Court granted summary judgment to Defendant with respect to Plaintiff's state-law claims, finding

1. For a complete recitation of the facts of this case, see *Certain v. Potter*, No. 1:02CV00182, slip op. at 1–5 (M.D.N.C. Oct.16, 2003) [Document # 44].

2. Plaintiff also brought her claims directly against Brian McCullough. The Court dismissed the claims against McCullough in its October 16, 2003, Opinion. Plaintiff's failure on her individual claims against McCullough is not pertinent to the Court's analysis of Plaintiff's present Motion for Attorney Fees and Costs. In this Opinion, therefore, the Court will only address Plaintiff's Title VII and state-law claims as being brought against the Postal Service.

that Plaintiff had failed to comply with the administrative requirements of the Federal Tort Claims Act in bringing these claims. However, the Court found that Plaintiff had demonstrated a genuine issue of material fact with respect to her Title VII claims for hostile work environment and retaliation, including her constructive-discharge claim. The case then proceeded to trial on October 20, 2003. At the close of the evidence, the Court granted Defendant's request for judgment as a matter of law with respect to Plaintiff's constructive-discharge claim. On October 24, 2003, the Court submitted Plaintiff's claims for hostile work environment and retaliation to the jury, and the jury found Defendant liable on both claims. On the same day, the jury awarded Plaintiff $1 as nominal damages for her hostile-work-environment claim, and $25,000 as compensatory damages for her retaliation claim. The Court thereafter entered the Judgment upon Jury Verdict on November 3, 2003.

After the entry of the Court's Judgment, Defendant and Plaintiff each filed posttrial motions. On November 7, 2003, Defendant timely filed a Motion for Remittitur of Damages or, in the Alternative, for a New Trial on Damages Resulting from Retaliation [Document # 50] (hereinafter "Motion for Remittitur or New Trial"). Plaintiff filed her Brief in Opposition to Defendant's Motion for Remittitur [Document # 51] on November 19, 2003, and Defendant filed its Reply [Document # 59] on December 4, 2003. On November 21, 2003, Plaintiff timely filed her Motion for Attorney Fees and Costs, requesting $52,542.00 in attorney's fees and $2025.56 in costs. Defendant objected to Plaintiff's Motion for Attorney Fees and Costs on December 22, 2003. (Def.'s Resp. Pl.'s

Mot. Att'y's Fees & Costs [Doc. # 62].) Plaintiff did not file a Reply.

On March 18, 2004, the Court held a hearing on these Motions. After a careful review of the evidence before the Court, the parties' arguments in their respective briefs, and the arguments made during the motion hearing, the Court denied Defendant's Motion for Remittitur or New Trial [Document # 50] from the bench, finding that "the evidence as presented during the course of the trial fully supported the verdict in the case and was not against the clear weight of the evidence as presented." (Mot. Hr'g Tr.) The Court then heard the parties' arguments with respect to Plaintiff's Motion for Attorney Fees and Costs, and informed the parties that the Court would take Plaintiff's Motion under advisement. The Court therefore finds that Plaintiff's Motion for Attorney Fees and Costs is now ripe for adjudication.

## III. DISCUSSION OF PLAINTIFF'S MOTION FOR ATTORNEY FEES AND COSTS

██ Plaintiff has moved to recover her attorney's fees pursuant to 42 U.S.C. § 1988(b) and 42 U.S.C. § 2000e-5(k).[3] Under each of these statutory provisions, the Court, in its discretion, may award attorney's fees to a "prevailing party" in a Title VII case. There is no dispute that Plaintiff is a prevailing party in this case because she received nominal damages with respect to her hostile-work-environment claim and $25,000 in compensatory damages with respect to her retaliation claim. *See Farrar v. Hobby*, 506 U.S. 103, 112–14, 113 S.Ct. 566, 573–74 121 L.Ed.2d 494 (1992) (holding that even a plaintiff who only recovers nominal damages against a defendant is a "prevailing party"

---

3. 42 U.S.C. § 2000e-5(k) provides, in pertinent part, as follows: "In any action or proceeding under [Title VII] the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee (including expert fees) as part of the costs ...."

under § 1988). Therefore, because Plaintiff is a prevailing party, the Court may award attorney's fees in this case.

### A. Lodestar Amount

■ The question before the Court, therefore, is, in light of the degree of success Plaintiff obtained, to what amount of attorney's fees is she entitled. In determining the amount of attorney's fees to award, the Court begins by calculating the "lodestar" figure. The lodestar figure is determined by multiplying the number of reasonable hours expended times a reasonable rate. *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *Rum Creek Coal Sales, Inc. v. Caperton,* 31 F.3d 169, 174–75 (4th Cir. 1994); *Daly v. Hill,* 790 F.2d 1071, 1077–78 (4th Cir.1986). To determine the reasonable rate and reasonable number of hours to use in calculating the lodestar, the Court is guided by the twelve *Johnson* factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Rum Creek,* 31 F.3d at 175 (citing *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974)). The Court will therefore consider these factors to determine (1) the reasonable number of hours and (2) the reasonable rate to be used in this case. *See Daly,* 790 F.2d at 1078.

### 1. Reasonable Number of Hours

■ To establish the number of hours reasonably expended, Plaintiff "should submit evidence supporting the hours worked ...." *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939. The number of hours should be reduced to exclude "hours that are excessive, redundant, or otherwise unnecessary" in order to reflect the number of hours that would properly be billed to the client. *Id.* at 434, 103 S.Ct. at 1939–40; *Daly,* 790 F.2d at 1079. In this case, Plaintiff's attorney, Mr. Thomas B. Kobrin, has presented billing records showing that he spent 194.6 hours prosecuting Plaintiff's claim. In evaluating whether these hours were reasonably expended, the Court finds most relevant the first and eighth *Johnson* factors: (1) the time and labor required and (8) the amount involved and the results obtained. Defendant's objections to these hours also generally fall within these categories. Defendant contends that Plaintiff's hours should be reduced for the following reasons: (a) Plaintiff is not entitled to recover for time spent researching Plaintiff's claims; (b) Mr. Kobrin's billing records are not sufficiently detailed; and (c) Plaintiff was not fully successful on her claims. The Court will address Defendant's objections in turn.

#### a. Research Time

■ Defendant contends that the time Mr. Kobrin spent on research is not compensable. The Court notes that Defendant does not contend that Mr. Kobrin spent an unreasonable amount of time researching Plaintiff's case, but that time spent researching a case is per se uncompensable. The Court agrees with Defendant to the extent that "time spent maintaining competency to practice law is part of the 'cost of doing business,'" and is not compensable. *Castle v. Bentsen,* 872 F.Supp. 1062, 1067 (D.D.C.1995) (refusing to compensate the plaintiff's attorney for

time spent reviewing the new Federal Rules of Civil Procedure). However, there is no per se rule that research time is never compensable. Thus, the Court holds, consistent with the Eastern District, that "counsel are not forbidden from receiving fees for background research if the research is (1) relevant and (2) reasonable in terms of time for the scope and complexity of the litigation." *Spell v. McDaniel*, 616 F.Supp. 1069, 1098 (E.D.N.C. 1985), *aff'd in part, vacated in part, and remanded in part on other grounds by* 824 F.2d 1380 (4th Cir.1987). As the district court in *Wileman v. Frank*, 780 F.Supp. 1063 (D.Md.1991), explained, "[w]here the movant has satisfied the Court that experienced, skilled counsel have conducted relevant legal research in good faith, the number of allowable hours in the lodestar computation will not be reduced absent a showing of specific grounds, which do not exist here." *Id.* at 1066. In the present case, based upon a review of Mr. Kobrin's billing records, the Court is satisfied that Mr. Kobrin expended a reasonable amount of time conducting relevant legal research in good faith. The Court will therefore not reduce Plaintiff's hours because they related to research.

### b. Lack of Detail in Mr. Kobrin's Billing Records

Defendant further contends that Mr. Kobrin's hours should be reduced to reflect the lack of detail in his billing records. Defendant's primary objection to the sufficiency of the billing records appears to be that Mr. Kobrin did not break out in his bills which hours related to which claims. The Fourth Circuit has previously addressed this issue, stating that a fee applicant should adhere to the following procedures when submitting a fee request:

First, the applicant must make every effort to submit time records which specifically allocate the time spent on each claim. Second, those records should attempt to specifically describe the work which the fee applicant allocated to unsuccessful claims so as to assist the district court in determining the reasonableness of the fee request. In establishing these guidelines, we recognize that some claims may have such a common core of facts and legal theories so as to prevent any allocation of the fees to the applicant's separate claims. However, we hereby admonish all parties that a blind adherence to this argument runs the risk of incurring a complete denial of fees.

*Fair Housing Council v. Landow*, 999 F.2d 92, 97 (4th Cir.1993). Of course, a plaintiff's complaint "cannot be viewed as a series of discrete claims" if the claims "involve a common core of facts or [are] based on related legal theories." *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940.

In Section III.A.1.c below, the Court will address whether Mr. Kobrin expended time on unsuccessful claims unrelated to successful claims. Accordingly, the Court finds it unnecessary to impose an across-the-board reduction in Mr. Kobrin's hours based on Defendant's assertion that Mr. Kobrin should have kept more specific billing records.

### c. Lack of Complete Success

Defendant finally contends that Mr. Kobrin's hours should be reduced due to Plaintiff's lack of complete success on her claims. Defendant contends that of Plaintiff's original four [4] claims, Plaintiff had no

---

4. Defendant actually contends that Plaintiff brought five separate claims: (1) harassment on the basis of color, (2) harassment on the basis of gender, (3) retaliation, (4) intentional infliction of emotional distress, and (5) negli-

gent infliction of emotional distress. The Court, however, views Plaintiff's harassment claims as actually one claim for hostile work environment on the basis of color or gender.

success on either of her emotional-distress claims and only received nominal damages with respect to her hostile-work-environment claim. Defendant further points out that Plaintiff also failed to establish that the Postal Service constructively discharged her. To determine the appropriate award of attorney's fees in a case in which the plaintiff does not achieve complete success, the Fourth Circuit has relied upon the process outlined by the Supreme Court in *Hensley v. Eckerhart*. *See Johnson v. City of Aiken*, 278 F.3d 333, 336–37 (4th Cir.2002) (citing *Hensley* ). In *Hensley*, the plaintiffs asserted several constitutional claims and eventually prevailed on most, but not all, of the claims. *Hensley*, 461 U.S. at 427–28, 103 S.Ct. at 1936. The district court in *Hensley* awarded fees under 42 U.S.C. § 1988(b), but it refused to reduce the award of fees by the hours spent on unsuccessful claims. *Id.* at 428, 103 S.Ct. at 1937. After the Eighth Circuit affirmed the district court's ruling, the Supreme Court vacated the award and remanded for reconsideration of the amount to be awarded. *Id.* at 440, 103 S.Ct. at 1943. The Supreme Court explained that a § 1988 award should reimburse the plaintiff for work "expended in pursuit of" the success achieved. *Id.* at 435, 103 S.Ct. at 1940 (internal quotations omitted). To determine the appropriate amount of a fee award, the district court should first identify "the number of hours reasonably expended on the litigation" and multiply that number "by a reasonable hourly rate." *Id.* at 433, 103 S.Ct. at 1939. The court should then subtract fees for hours spent on unsuccessful claims unrelated to successful ones. *Id.* at 435, 103 S.Ct. at 1940. Once the court has subtracted fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending upon the degree of success achieved by the plaintiff. *Id.* at 435–36, 103 S.Ct. at 1940–41.

██ Thus, where a plaintiff prevails on some claims but not others, the Court must identify the relationship between the successful and unsuccessful claims. If the claims are based on different facts and legal theories, the plaintiff should not be compensated for time spent pursuing the unsuccessful claims because that effort was not "expended in pursuit of the ultimate result achieved." *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940 (internal quotations omitted). However, where the plaintiff's claims involve "a common core of facts or will be based on related legal theories," the attorney's time will be "devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id.* at 435, 103 S.Ct. at 1940. In that case, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*

In the present case, Defendant contends that at least some portion of the hours Mr. Kobrin spent pursuing Plaintiff's unsuccessful emotional-distress claims, as well as Plaintiff's unsuccessful constructive-discharge claim, are wholly unrelated to her successful retaliation claim and should therefore be excluded from the lodestar calculation. Defendant further contends that at least some portion of the hours Mr. Kobrin spent pursuing Plaintiff's hostile-work-environment claim, for which Plaintiff only received nominal damages, are unrelated to Plaintiff's successful retaliation claim and should also not be included in the lodestar calculation. The Court will first address Defendant's contentions that

This is how the Court addressed this claim in its earlier Memorandum Opinion, and it is also how the Court submitted this claim

(without objection from the parties) to the jury.

Mr. Kobrin expended hours on unsuccessful claims that are wholly unrelated to successful claims. The Court will then determine whether it should reduce Plaintiff's fee award due to Plaintiff's lack of complete success in her litigation.

#### (1) Hours Spent on Unsuccessful Claims Unrelated to Successful Claims

 Defendant first contends that Plaintiff's request for fees should be reduced by the hours that Mr. Kobrin spent solely on Plaintiff's unsuccessful claims for intentional and negligent infliction of emotional distress and constructive discharge, as well as Plaintiff's only nominally successful hostile-work-environment claim. Mr. Kobrin contends, however, that "[i]t is Ms. Certain's position that these claims are so intertwined that you cannot separate work that was done on any of these claims from any of the other claims." (Mot. Hr'g Tr.) Mr. Kobrin concedes, however, that he did in fact spend 2–3 hours exclusively on the state-law claims and 5–8 hours on the claim for constructive discharge. (Pl.'s Br. Supp. Mot. Att'y Fees & Costs [Doc. # 53] at 5–6.) Therefore, especially in light of the lack of specificity in Mr. Kobrin's billing records, the Court finds it appropriate to reduce Mr. Kobrin's hours by 11 to account for time spent solely on the unsuccessful constructive-discharge and state-law claims that did not aid the litigation as a whole.

 With respect to Defendant's contention that this Court should separate out the time Mr. Kobrin spent working on her hostile-work-environment claim, the Court finds this contention to be without merit. In support of this assertion, Defendant relies upon *Hensley v. Eckerhart*, as well as this Court's decision in *Page v. Trustees of Sandhills Community College*, No. 3:96CV00358, 1999 WL 1937475 (M.D.N.C. Aug.31, 1999). Defendant's citations to *Hensley* and *Page*, however, are misplaced. In *Page*, this Court, applying

*Hensley*, actually found that the plaintiff's claims "involved a common core of facts and were inextricably intermingled." *Page*, 1999 WL 1937475, at *16 (internal quotations omitted). Thus, the Court "found that it would be unreasonable to ask [the][p]laintiff's attorneys to divide the hours spent between the two claims, since the interrelated nature of the claims would make such a division almost impossible." *Id.* (citing *Abshire v. Walls*, 830 F.2d 1277, 1282–83 (4th Cir.1987)). Defendant has thus cited no authority refuting Plaintiff's position that Plaintiff's claims for hostile work environment and retaliation do not involve "a common core of facts" or are not "based on related legal theories." *Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940. In fact, existing authority suggests the contrary. *See, e.g., Berroth v. Farm Bureau Mut. Ins. Co.*, No. Civ.A. 01–2095–CM, 2003 WL 22102135, at *2 (D.Kan. Aug.5, 2003) (finding that the plaintiff's sexual-harassment and retaliation claims arose from the same common core of facts as the plaintiff's failure-to-promote claim); *Raniola v. Bratton*, No. 96 Civ. 4482(MHD), 2003 WL 1907865, at *3 & n. 5 (S.D.N.Y. Apr.21, 2003) (finding that "[t]he evidence pertinent to the hostile-environment claim was directly relevant to the retaliation claim").

Based upon the Court's intimate familiarity with the facts and legal contentions of this case, the Court finds that, except for the hours already specifically excluded related to Plaintiff's state-law and constructive-discharge claims, all of Plaintiff's claims arise from a common set of facts and interrelated legal theories. The Court therefore finds that Mr. Kobrin spent 183.6 (194.6–11.0) hours that contributed to the overall success of the litigation. Having excluded hours Mr. Kobrin spent solely on unsuccessful claims unrelated to successful claims, the Court will now focus on

Plaintiff's overall degree of success in her litigation.

### (2) Overall Degree of Success

Defendant contends that Plaintiff's overall success in her litigation was quite limited. Defendant argues that Plaintiff failed on her emotional-distress claims, her constructive-discharge claim, and only achieved nominal relief with respect to her hostile-work-environment claim. With respect to her claims for emotional distress, the Court finds Plaintiff's failure on these claims to not be particularly significant in terms of Plaintiff's overall success because the relief Plaintiff could have obtained on these claims against the Postal Service was essentially duplicated by the relief Plaintiff could have obtained under Title VII. Furthermore, as noted above, the Court has already eliminated hours that Mr. Kobrin spent exclusively on these claims.

■ With respect to Plaintiff's claim that she was constructively discharged, however, the Court does find that Plaintiff's failure on this claim likely impacted Plaintiff's overall success in terms of recovering damages against Defendant. Therefore, Plaintiff's failure on her constructive-discharge claim is relevant to the Court's determination of Plaintiff's overall level of success. The Court notes, however, that Mr. Kobrin's hours have already been reduced to reflect the amount of time he spent exclusively on this claim. The Court therefore finds it inappropriate to make any further reductions based specifically upon Plaintiff's lack of success on her constructive-discharge claim. Consistent with *Hensley,* the Court will instead make any further reduction in Plaintiff's fee award based upon the Court's analysis of the *overall* relief awarded to Plaintiff compared to the overall relief sought.

The Court notes, however, that the primary dispute between the parties centers on whether the Court should reduce Plaintiff's fee award due to Plaintiff's only nominal success on her hostile-work-environment claim. Defendant contends that, under *Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), while Plaintiff is technically a prevailing party on this claim, Plaintiff's success on her hostile-work-environment claim was not material enough to warrant an award of attorney's fees. Accordingly, Defendant contends that Plaintiff's fee award should be reduced to account for her lack of success on her hostile-work-environment claim.

Mr. Kobrin contended at the motion hearing, however, that Plaintiff's hostile-work-environment claim "was a successfully litigated claim. She obtained an award based on that claim." (Mot. Hr'g Tr.) In support of this assertion, Mr. Kobrin argued that the jury's finding that Plaintiff was subjected to a hostile work environment "vindicated important rights, especially when you're considering it was a federal Defendant in this and I think the federal government needs to be reminded that these laws apply to it, too. Your Honor, I believe that it is appropriate for the Court to award attorney's fees based on that claim." (*Id.*)

■ The Court notes, however, that in *Farrar v. Hobby,* the Supreme Court held that "[w]hen a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all." *Farrar,* 506 U.S. at 115, 113 S.Ct. at 575 (citation omitted). In determining the amount of a reasonable fee, the Supreme Court noted that " '[t]he most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.' " *Id.* at 114, 113 S.Ct. at 574 (quoting *Hensley,* 461 U.S. at 436, 103 S.Ct. at 1941). In order to determine the degree of success Certain achieved with respect to her hostile-work-

environment claim, the Court must "give primary consideration to the amount of damages awarded as compared to the amount sought." *Id.* at 114, 113 S.Ct. at 575 (internal quotations omitted). In her concurring opinion in *Farrar*, Justice O'Connor expanded on the majority's reasoning and enunciated three factors a court must consider when determining a proper award of attorney's fees. First, as also stated in the majority opinion in *Farrar*, this Court must consider "[t]he difference between the amount recovered and the damages sought." *Id.* at 121, 113 S.Ct. at 578 (O'Connor, J., concurring). Second, this Court must analyze "the significance of the legal issue on which the plaintiff claims to have prevailed." *Id.* (O'Connor, J., concurring). Finally, this Court must focus on whether Plaintiff's nominal-damages award is material, that is, whether Plaintiff's success on this claim "accomplished some public goal other than occupying the time and energy of counsel, court, and client." *Farrar*, 506 U.S. at 121–22, 113 S.Ct. at 578 (O'Connor, J., concurring).

▮ The Court will therefore address the *Farrar* factors with respect to Plaintiff's hostile-work-environment claim. With respect to factor one, Plaintiff clearly sought to recover more than nominal damages on her hostile-work-environment claim. Thus, Plaintiff's failure to recover any compensatory damages obviously demonstrates that there is a significant difference between the relief awarded and the relief sought. With respect to factors two and three, the Court finds that in this case the first factor outweighs the latter two factors, that is, whatever significant legal issue Certain may have advanced or public goal that Certain may have vindicated is outweighed by the fact that Certain brought this claim for personal reasons but failed to obtain an award of compensatory damages for the alleged emotional distress she experienced due to the hostile work environment. Thus, the Court finds that Plaintiff's degree of success on her hostile-work-environment claim was extremely limited.

▮ The Court notes, however, that it cannot view any of Plaintiff's individual claims in a vacuum, but instead must look at the litigation as a whole to determine whether Plaintiff's overall success (or lack thereof) warrants a reduction of her fee award. *See Johnson v. Hugo's Skateway*, 974 F.2d 1408, 1419 (4th Cir.1992) (en banc) (holding that where a plaintiff receives a sizable verdict, a trial court's reduction of fees simply because the plaintiff only prevailed on one of three interrelated counts misapplies *Hensley* and is therefore an abuse of discretion). As the Supreme Court explained in *Hensley*, "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Hensley*, 461 U.S. at 440, 103 S.Ct. at 1943. In this case, the Court finds that while Plaintiff achieved a fair amount of success on her claims against Defendant, her overall success was limited. In Plaintiff's Complaint, Plaintiff requested the following relief:

1. Compensation for the damages she has suffered as a result of Defendant['s] actions [sic] including front pay, back pay and loss of benefits;

2. Compensation for the mental and physical injuries suffered by Certain as a result of Defendant['s] actions; [and]

3. Punitive damages . . . .

(Compl.[Doc.# 1].)

Plaintiff, however, only obtained relief against Defendant of $25,001. Of this amount, Plaintiff only received $25,000 of

compensatory damages for her retaliation claim, and $1 in nominal damages for her hostile-work-environment claim. The Court therefore finds the total relief Plaintiff obtained to be limited in comparison to the total relief she sought. Thus, in light of the limited nature of Plaintiff's overall success, the Court finds a 20% reduction in Plaintiff's overall hours to be appropriate. Accordingly, the Court finds that Plaintiff may be compensated for Mr. Kobrin's expenditure of 146.9 (183.6 × .80) hours.

### 2. Reasonable Hourly Rate

The Court must now determine a reasonable hourly rate for Mr. Kobrin. *See Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. A reasonable hourly rate is defined as "the 'prevailing market rate[ ] in the relevant community.'" *Rum Creek Coal Sales, Inc.*, 31 F.3d 169, 175 (4th Cir.1994) (quoting *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984)). Plaintiff contends that the prevailing market rate for Mr. Kobrin's services in the Middle District of North Carolina is $225/hour. Defendant, however, contends that Plaintiff should not be permitted to recover more than "the actual hourly rate of $75.00 charged to plaintiff pursuant to [her] contract with her counsel." (Def.'s Resp. Pl.'s Mot. Att'y Fees & Costs at 6 (emphasis omitted).) In making this argument in its brief, Defendant failed to address the fact that Plaintiff's contract with her counsel was actually a contingency agreement whereby Mr. Kobrin charged Plaintiff $75.00/hour plus 25% of any recovery. In the motion hearing, however, Defendant's counsel contended that only the $75.00/hour component of the fee agreement was relevant to this Court's determination of a reasonable fee. As Defendant's counsel argued, "while the agreement between Mr. Kobrin and his client doesn't bind the Court, I think it's very, very significant.... [T]he Supreme Court has acknowledged the significance of the *Johnson* factors and the *Johnson* factors specifically say that in no event should the litigant be awarded more than they're required to pay their attorney." (Mot. Hr'g Tr.)

Defendant's arguments, however, are misplaced. In *Johnson*, the Fifth Circuit Court of Appeals did state that "[i]n no event, however, should the litigant be awarded a fee greater than he is contractually bound to pay," *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 718 (5th Cir.1974), and the Supreme Court did quote this language in its decision in *Hensley*. However, in *Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989), the Supreme Court clarified that "we doubt that Congress embraced this aspect of *Johnson* ...." *Id.* at 92, 109 S.Ct. at 944. The Supreme Court thus held that "the fee agreement is but a single factor and not determinative." *Id.* As the Fourth Circuit Court of Appeals reiterated in *Trimper v. City of Norfolk, Va.*, 58 F.3d 68 (4th Cir.1995), "the proper measure of fees is the prevailing market rate in the relevant market, and not the rate charged by the actual attorney in question." *Id.* at 76 (emphasis omitted). Thus, while the rate that Plaintiff's counsel normally charges his paying clients is relevant to a determination of the prevailing market rate, it is not dispositive. Regardless, Defendant cannot seriously contend that $75/hour is indicative of Mr. Kobrin's normal hourly rate or the prevailing market rate for legal services in the Middle District of North Carolina. It seems obvious that Mr. Kobrin significantly discounted his fixed hourly fee to $75/hour only because he entered into a contingent-fee agreement with Certain.

Defendant contends, however, that a fee award greater that $75/hour would result in a windfall for Mr. Kobrin because he would recover both the fee

award plus his contingency. This argument is without merit. First, the fee award accrues to the benefit of the "prevailing party," Mrs. Certain, and not her attorney. *Evans v. Jeff D.,* 475 U.S. 717, 730–32, 106 S.Ct. 1531, 1539–40, 89 L.Ed.2d 747 (1986). Second, § 1988 and 42 U.S.C. § 2000e–5(k) do not address contractual obligations between a plaintiff and her attorney. In fact, the Supreme Court has held that nothing in these statutes prevents a plaintiff from contracting with an attorney and actually being liable to that attorney for more than the reasonable attorney's fees ultimately awarded by the court. *Venegas v. Mitchell,* 495 U.S. 82, 88–90, 110 S.Ct. 1679, 1683–84, 109 L.Ed.2d 74 (1990). Likewise, nothing in these statutes prevents a plaintiff from assigning her fee award to her attorney. *Id.* at 88, 110 S.Ct. at 1683. Third, and perhaps most importantly, the requirement that this Court calculate the fee award based upon the reasonable hours expended times a reasonable market rate "is designed to prevent any such 'windfall.'" *Blanchard,* 489 U.S. at 96, 109 S.Ct. at 946. As the Supreme Court has previously held, "fee awards, properly calculated, by definition will represent the reasonable worth of the services rendered in vindication of the plaintiff's civil rights claim." *Id.* On the contrary, Defendant's request that Plaintiff only be awarded attorney's fees at $75/hour would more likely result in a windfall for *Defendant* because $75/hour is obviously an unreasonably low rate for the services rendered by Mr. Kobrin.

In conclusion, therefore, this Court's determination of a reasonable hourly rate must be based upon a determination of the prevailing market rate in the relevant legal community. It is not limited by Plaintiff's fee agreement with her attorney, and the Court's award of attorney's fees to Plaintiff does not control how much Certain might be liable to her attorney. Thus,

Defendant's argument that Mr. Kobrin might ultimately receive both the fee award and a contingency fee is not relevant to the question before this Court, that is, the determination of the reasonable fee award that *Defendant* must pay to *Plaintiff* pursuant to this Court's decision.

 The Court will therefore consider the question of what is a reasonable hourly rate for Mr. Kobrin's services. The Court first notes that Plaintiff (through her attorney) bears the burden "to produce satisfactory evidence—in addition to the attorney's own affidavit—that the requested rate[ ][is] in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson,* 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984). In this case, the Court finds that three *Johnson* factors—the customary fee; the attorney's experience, reputation, and ability; and awards in similar cases—are relevant to determining the prevailing market rate for the services rendered by Mr. Kobrin. *See Wagner v. Dillard Dep't Stores, Inc.,* No. 1:98CV499, 2000 WL 33321252, at *2 (M.D.N.C. July 21, 2000) (finding these three *Johnson* factors to be relevant to determine a reasonable hourly rate). In this case, Mr. Kobrin has offered no evidence of his customary hourly fee for similar work. However, Mr. Kobrin has offered evidence that the prevailing market rate in the relevant legal community for attorneys of his caliber and experience is $225/hour. This evidence includes the following: First, Mr. Kobrin offers his own affidavit, in which he states that he was admitted to practice in 1992, and since 1993 he has been heavily involved in employment litigation. (Kobrin Aff. [Doc. # 55] ¶ 1.) He further states as follows:

I have consulted with several members of the local bar regarding the usual and

customary rates for attorneys with roughly my experience in this area of practice. I have been quoted rates of $220 per hour, $235 per hour and that it varies between $200 and $250 per hour. I believe that the average usual and customary rate for attorneys with my experience practicing in this area is $225.00 per hour.

(*Id.* ¶ 3.) Second, Plaintiff offers an affidavit from attorney Jonathan R. Harkavy, who has experience as an employment-discrimination attorney in this area. Mr. Harkavy states only that "the hourly rate suggested by [Mr. Kobrin is] reasonable under the circumstances of this case." (Harkavy Aff. [Doc. # 56] ¶ 4.)

Defendant counters, however, that this evidence is self-serving. In support of its contention that the prevailing market rate is much lower than $225/hour, Defendant relies in part upon the 1998 North Carolina Bar Association Economic Survey ("1998 Survey" or "Survey"), which states that the typical hourly rate for an attorney like Mr. Kobrin (i.e., admitted to the bar in 1991–1992, practicing solo, and in a city of over 100,000) is $97.00/hour. Defendant's reliance upon the 1998 Survey is problematic at best, and Defendant even acknowledged during the motion hearing that the 1998 Survey "was really offered sort of as a guideline in counter to Harkavy's [affidavit] and Mr. Kobrin's assertion that $225 an hour is a reasonable rate." (Mot. Hr'g Tr.)

In evaluating the relevance of the 1998 Survey, the Court notes that the $97/hour rate Defendant cites from the Survey would have been a typical hourly rate in 1997 for a lawyer, such as Mr. Kobrin, who was admitted to the bar in 1991–1992. Accordingly, this figure represents the 1997 hourly rate for an attorney with approximately 5–6 years of experience. However, it is now 2004, and Mr. Kobrin has approximately 12 years of experience,

not 5–6. Thus, when applying the 1998 Survey to Mr. Kobrin, it would be more appropriate for the Court to look at typical hourly rates for attorneys admitted to practice in 1984–1985. According to the Survey, a solo practitioner in 1997 in a city of over 100,000 people admitted to practice in 1984–1985 would earn between $139 and $162 per hour.

At the motion hearing, Mr. Kobrin contended that when looking at the 1998 Survey, the Court should take into account that "rates have gone up considerably since then." (Mot. Hr'g Tr.) The Court notes that this may very well be true. However, other than his own affidavit and Mr. Harkavy's affidavit (neither of which are particularly probative on this point), Mr. Kobrin has offered no other concrete evidence in support of his assertion that "rates have gone up considerably" since 1997. In addition, Mr. Kobrin also argued that if the Court were to rely upon the 1998 Survey, the Court should look at the hourly rates for labor law in the Survey, which Mr. Kobrin stated ranged from $151/hour to $195/hour. Given Mr. Kobrin's experience in the area of employment law, the Court agrees with Mr. Kobrin that the Survey's listing of rates for labor-law attorneys would also be relevant to this Court's consideration of a reasonable fee for his legal services.

In addition to the evidence proffered by the parties, the Court also notes that awards to attorneys in similar cases are relevant to this Court's determination of a reasonable fee for Mr. Kobrin's services. In *Herring v. Thomasville Furniture Industries, Inc.*, No. 4:96CV00081, 1999 WL 1937352 (Aug. 31, 1999), also an employment-discrimination case, this Court found $150/hour to be a reasonable rate for an attorney who had been practicing law for eighteen years and had litigation and employment law experience. *Id.* at *11. In

*Page v. Trustees of Sandhills Community College,* No. 3:96CV00358, 1999 WL 1937475 (M.D.N.C. Aug.31, 1999), another employment-discrimination case, this Court found $125/hour to be a reasonable rate for an attorney with ten years of experience, and $175/hour to be a reasonable rate for both an attorney with thirty-three years and an attorney with forty-three years of experience. *Id.* at *19. More recently, another court in this district in an employment-discrimination case found a rate of $200/hour reasonable for an attorney who had been practicing since 1987. *See Jones v. Bryant,* No. 1:01CV00936, 2004 WL 1013308, at *3 (M.D.N.C. May 4, 2004), *appeal docketed,* No. 04–1689 (4th Cir. June 7, 2004), *appeal docketed,* No. 04–1706 (4th Cir. June 9, 2004).

Based upon the Court's consideration of the affidavits presented, the 1998 Survey, typical fees awarded in similar cases, and the Court's knowledge of typical fees in the area, the Court finds that a rate of $170/hour would be a reasonable hourly rate for an attorney with Mr. Kobrin's skill and experience. The Court therefore declines both Mr. Kobrin's invitation to award an hourly rate of $225/hour and Defendant's invitation to award only $75/hour.

In conclusion, therefore, the Court finds that a reasonable number of hours is 146.9 and a reasonable rate is $170/hour. The Court therefore calculates the lodestar amount to be $24,973.00.

## B. Enhancement to the Lodestar

■ Plaintiff contends, however, that the lodestar amount should be enhanced by 20% in this case because Mr. Kobrin had a contingent-fee agreement with Plaintiff and "there was a significantly greater than average risk of a zero or very low verdict" (Pl.'s Br. Supp. Mot. Att'y Fees & Costs [Doc. # 53] at 6.) However,

in *City of Burlington v. Dague,* 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), the Supreme Court unequivocally held that enhancement based on the risk of contingency is not compatible with fee-shifting statutes, "nor is [such an enhancement] necessary to the determination of a reasonable fee." *Id.* at 561–62, 565–66, 112 S.Ct. at 2641, 2643 (analyzing fee-shifting statutes under the Solid Waste Disposal Act and the Clean Water Act, but noting that those statutes were similar to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e–5(k) and that "our case law construing what is a 'reasonable' fee applies uniformly to all of them"). Therefore, the Court will not allow any enhancement based on the contingent nature of the case.

## C. Costs

■ The Fourth Circuit Court of Appeals has held that out-of-pocket expenses incurred by the attorney in a civil rights case can be recovered under 42 U.S.C. § 1988 so long as they "are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel,* 852 F.2d 762, 771 (4th Cir.1988) (per curiam) (internal quotations omitted). Reasonable litigation expenses include such expenses as "secretarial costs, copying, telephone costs and necessary travel." *Trimper v. City of Norfolk, Va.,* 58 F.3d 68, 75 (4th Cir.1995). Plaintiff requests reimbursement for costs in the amount of $2025.56, broken down as follows: (1) filing fee: $150.00; deposition costs: $1022.65; (3) mediation fee: $375.00; and (4) miscellaneous costs (postage, telephone, and copying): $477.91. Defendant's only objection to Plaintiff's request for costs is that there is no breakdown of what expenses are included in "miscellaneous costs." Mr. Kobrin admits that he cannot provide an itemized breakdown of these costs, but attests that these are postage, telephone,

and copying expenses. Although the Court must caution Mr. Kobrin about the lack of detail in his Bill of Costs, the Court does find the "miscellaneous costs" requested here to be reasonable in light of the length and nature of this litigation. As such, the Court will award Plaintiff costs in the full amount of $2025.56.

### D. Conclusion

After a thorough review of Plaintiff's Motion for Attorney Fees and Costs and Defendant's Response, the Court finds that Plaintiff is. entitled to a total fee award of $26,998.56. The Court finds this amount to be appropriate based upon Plaintiff's limited success and the lower hourly rate applied by the Court. Although this fee award is significantly lower than Plaintiff requested in her fee petition, the Court rejects Defendant's contention that Plaintiff's "fee petition is 'outrageously unreasonable' and should be denied" in its entirety. (Def.'s Resp. Pl.'s Mot. Att'y Fees & Costs at 9) (quoting *Fair Housing Council v. Landow*, 999 F.2d 92, 96 (4th Cir.1993).) Plaintiff's fee petition, while admittedly not perfectly presented, is far from being "so excessive [that] it shocks the conscience of the court." *Landow*, 999 F.2d at 97. Accordingly, the Court will, in its discretion, deny Plaintiff's request for attorney's fees in the specific amount of $52,542.00. The Court will instead grant Plaintiff's Motion for Attorney Fees and Costs to the extent that the Court finds that Plaintiff is entitled to a reasonable award for attorney's fees of $24,973.00 and costs of $2025.56.

An Order and Judgment consistent with this Memorandum Opinion shall be filed contemporaneously herewith.

### ORDER AND JUDGMENT

For the reasons set forth in the Memorandum Opinion filed contemporaneously herewith, IT IS HEREBY ORDERED that Plaintiff Zepora Certain's Motion for Attorney Fees and Costs [Document # 52] is GRANTED in the amount of $26,998.56.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Defendant shall pay Plaintiff $24,973.00 in attorney's fees and $2025.56 in costs.