Out of the Box Devs., LLC v. LogicBit Corp., 2014 NCBC 39.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
10 CVS 8327

OUT OF THE BOX DEVELOPERS,
LLC, d/b/a OTB CONSULTING,

      Plaintiff,

v.

DOAN LAW, LLP and THE DOAN LAW
FIRM, LLP,

      Defendants.

**ORDER ON POST-TRIAL MOTIONS
AND FINAL JUDGMENT**

{1}     THIS MATTER is before the court on several post-trial motions: (1) Defense Counsel's Motion to Withdraw; (2) Defendants' Motion for Judgment Notwithstanding Verdict or for a New Trial, and Motion to Amend Judgment; (3) Plaintiff's Motion for Additional Injunctive Relief; and (4) Plaintiff's Request for Award of Attorneys' Fees. Defense Counsel's Motion to Withdraw is uncontested. Each of the contested motions has been fully briefed. The motions are ripe for ruling.

    *Ellis & Winters LLP by Jonathan D. Sasser and C. Scott Meyers for Plaintiff.*

    *Sands Anderson P.C. by David McKenzie for Defendants.*

Gale, Judge.

### Procedural Background for the Post-Trial Motions

{2}     This matter was tried before a jury beginning on May 19, 2014. On May 29, 2014, the jury returned its verdict on eighteen contested issues. The court entered its Judgment on June 6, 2014, which indicated that it would award attorneys' fees to Plaintiff pursuant to a subsequent application. The Parties then timely filed the above post-trial motions, and Plaintiff filed such application.

{3}     The court has previously entered multiple prior orders which summarize the various claims and case history in significant detail. *See Out of the Box Developers, LLC v. LogicBit Corp.*, 2013 NCBC LEXIS 28 (N.C. Super. Ct. June 5, 2013); *Out of the Box Developers, LLC v. LogicBit Corp.*, 2012 NCBC LEXIS 55 (N.C. Super. Ct. Oct. 20, 2012); *Out of the Box Developers, LLC v. LogicBit Corp.*, Order, 10 CVS 827 [Wake] (N.C. Super. Ct. Jan. 30, 2014). The court here offers a more abbreviated summary to provide context for the present motions.

{4}     LexisNexis licenses time management software for attorneys known as TimeMatters. The program is generic and not adaptive to any particular practice area. Plaintiff Out of the Box Developers, Inc. ("OTB") developed and licenses customizations to TimeMatters for bankruptcy attorneys, known as BK*express*. Defendants Doan Law, LLP ("Doan Law") and Doan Law Firm, LLP ("Doan Law Firm") (collectively, "Doan Defendants") are two of various Doan family entities which practice bankruptcy in several California locations. Doan Law had license agreements with LexisNexis for TimeMatters and with OTB for BK*express*. Doan Law's licensing agreement with OTB ("Licensing Agreement"), Schedule 1, Section 8(ii) required Doan Law to allow OTB to remove its customizations at the end of the license period. Schedule 1, Section 3 prohibited Doan Law from using OTB's software for purposes of gaining a competitive advantage.

{5}     The dispute arose at the end of the first licensing period of the Licensing Agreement when the Parties could not agree on pricing to renew. At that time, former Defendants Frank Rivera and his company, LogicBit, had developed and were marketing an attorney time management program, known as HoudiniEsq. Doan Law determined not to renew its license with BK*express* and to use HoudiniEsq instead. Doan Law worked with Rivera to transport Doan Law's client data to the HoudiniEsq platform. To accomplish the data transfer, Doan Law and Rivera used an SQL script. OTB obtained a copy of the script from Doan Law's IT contractor without Doan Law's permission. OTB claims Doan Law improperly transported more than the firm's data and further improperly copied essential

elements from BK*express* into a modified HoudiniEsq platform for Doan Law's use. Defendants claim that they only transported necessary information to comprehend Doan Law's own client data.

{6}     The Parties have hotly contested positions on multiple issues.  These disputes include the following: (1) whether BK*express* embodies OTB's trade secrets; (2) whether OTB seeks to claim intellectual property in Doan Law's own client data; (3) whether OTB unlawfully attempted to restrict Doan Law's access to its own data through the license restrictions; (4) whether Doan Law breached the Licensing Agreement by improperly refusing OTB access to remove BK*express* customizations at the end of the licensing term; (5) whether Doan Law, with Rivera and LogicBit's assistance, improperly copied and utilized OTB's proprietary customizations to adapt the HoudiniEsq platform to Doan Law's bankruptcy platform; (6) whether Doan Law was authorized to utilize the SQL script to unlock its own client data from BK*express* and did not otherwise use any of OTB's proprietary data; (7) whether OTB is liable to Doan Law for obtaining and utilizing an unauthorized copy of the script file Doan Law used for its data migration; and (8) whether either of the Parties is therefore liable for an unfair and deceptive trade practice or for punitive damages.  The court cautions that it has stated these issues in a simplified way to provide background.  Reference is again made to more detailed discussion in the court's prior orders.

{7}     The litigation began when OTB, following its review of the SQL script it obtained, filed its complaint for trade secret misappropriation and breach of contract.  It sought immediate injunctive relief.  The presiding Superior Court judge granted a temporary restraining order, after which the case was specially assigned to the Honorable Ben Tennille, who calendared the matter for hearing on OTB's Motion for Preliminary Injunction.  The Parties then entered a negotiated agreement, which they did not file as a court order, and advised Judge Tennille than no preliminary injunction order would be necessary.  Settlement negotiations followed shortly thereafter, resulting in an initial agreement in principle to resolve matters by a small monetary payment and entry of an injunction.  However, no

settlement was consummated when the Parties could not agree on the scope of the injunction.

{8} The case then proceeded through extensive discovery and motion practice, with each side pressing affirmative claims and defenses against the other. Ultimately, OTBs claims against Rivera and LogicBit were dismissed. The matter proceeded to trial only on the claims between OTB, Doan Law, and Doan Law Firm.

{9} During the course of discovery, the court considered Plaintiff's Motion for Partial Summary Judgment and Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction. In ruling, the court narrowed the trial issues by dismissing some of OTB's claims because they were preempted by the Copyright Act. The court also granted partial summary judgment in OTB's favor against Doan Law for its breach of Section 8(ii) of the Licensing Agreement, which required that OTB be given access to remove its customizations at the end of the licensing period. Doan Law acknowledged its refusal, but contended that no damages resulted. The court left the question of damages resulting from this breach to a jury's future determination.

{10} During the course of discovery and before trial, the court was required to review multiple motions for sanctions. By Order dated June 5, 2013, the court found that monetary sanctions should be taxed, jointly and severally, against Doan Law and Doan Law Firm for discovery abuses. By Order dated July 10, 2013, the court quantified these sanctions in the total amount of $35,027.16. Upon Defendants' motion, the court deferred payment of the sanctions until after entry of Judgment following trial.

{11} When the case was first set for trial, based on representations at the pre-trial conference, the court arranged for the Parties to participate in an October 2013 Settlement Conference before Chief Business Court Judge John Jolly. No settlement was reached.

{12} The court was, however, required to continue the trial date when it was advised that certain events had occurred on or around the mediation date that suggested that Rivera and LogicBit had violated the court's Protective Order by

posting restricted documents on multiple internet websites. The court allowed limited discovery and then found such violations and entered sanctions against Rivera and LogicBit.

{13} The case proceeded to trial between OTB and the Doan Defendants. As evidenced by the verdict sheet, each side was exposed to jury findings that might support a finding of unfair and deceptive trade practices, with consequent exposure to treble damages and an award of attorneys' fees. At all times, Doan Law remained exposed to damages to be awarded for its breach of Section 8(ii) of the Licensing Agreement that the court earlier adjudicated. Doan Law and Doan Law Firm also remained obligated for the sanctions the court had ordered, but for which it deferred payment.

{14} Throughout trial, the court reminded both sides that they each earlier indicated that neither reasonably expected a significant monetary recovery that would justify their exposure to adverse findings on claims that would allow enhanced remedies. The court continually encouraged the Parties to settle. Plaintiff again indicated that it would accept any reasonable settlement offer that included a modest monetary contribution in addition to the sanctions the court had ordered. Defendants never made any offer to pay the court-imposed sanctions. At one point, Defendants offered to pay minimal damages if the court would forgive the sanctions. That offer was later withdrawn.

{15} The jury considered and answered the following eighteen contested issues:

### ISSUE NUMBER ONE

**What amount is OTB entitled to recover from Doan Law, LLP for its breach of Section 8(ii) of the Licensing Agreement?**

$ 15,675.00

## ISSUE NUMBER TWO

Did Doan Law, LLP breach Section 3 of its licensing agreement with OTB by improperly using the BKexpress customizations to TimeMatters for the purpose of competing with OTB, creating derivative works from the System, or creating software with similar functionality?

Yes: __X____          No: _____

If you answered "Yes," proceed to Issue Number Three. If you answered "No," leave Issue Number Three blank and proceed to Issue Number Four.

## ISSUE NUMBER THREE

What amount is OTB entitled to recover from Doan Law, LLP for the breach of Section 3 of the License Agreement?

$_____$1.00_____

## ISSUE NUMBER FOUR

Does OTB have protectable trade secrets in its BK*express* customizations to TimeMatters?

Yes: __X____          No: _____

If you answered "Yes," proceed to Issue Number Five. If you answered "No," leave Issues Five, Six, Seven, Eight, and Nine blank and proceed to Issue Number Ten.

## ISSUE NUMBER FIVE

As to any information from the BKexpress customizations to TimeMatters which OTB claims to be a trade secret, did the Defendants acquire that information by independent development, reverse engineering, or from another person who had the right to disclose the trade secret?

Yes: _____          No: __X___

If you answered "Yes," proceed to Issue Number Ten. If you answered "No," proceed to Issue Number Six.

## ISSUE NUMBER SIX

Did the Defendants misappropriate the trade secret of OTB?

    A.     Doan Law, LLP        Yes: _____          No: __X___

    B.     The Doan Law Firm, LLP Yes: _____          No: __X___

If you answered "Yes," proceed to Issue Number Seven. If you answered "No," leave Issues Seven, Eight, and Nine blank and proceed to Issue Number Ten.

## ISSUE NUMBER SEVEN

Did the Defendants' misappropriation of OTB's trade secret as found in Issue Number Six cause economic loss to OTB or unjustly enrich the Defendants?

        Yes: _____          No: _____

(not answered)

If you answered "Yes," proceed to Issue Number Eight. If you answered "No," leave Issues Eight and Nine blank and proceed to Issue Number Ten.

## ISSUE NUMBER EIGHT

In what amount has OTB been damaged by the misappropriation of OTB's trade secret by the Defendants?

$_____

(not answered)

## ISSUE NUMBER NINE

**Did the Defendants conspire to misappropriate OTB's trade secret?**

A. Did Doan Law LLP conspire with Doan Law firm LLP and/or Francisco Rivera and/or LogicBit Corp. or any one of them, to misappropriate OTB's BKexpress customizations to TimeMatters?

Yes: _____          No: _____

B. Did Doan Law Firm, LLP conspire with Doan Law LLP and/or Francisco Rivera and/or LogicBit Corp. or any one of them, to misappropriate OTB's BKexpress customizations to TimeMatters?

Yes: _____          No: _____

**(not answered)**

## ISSUE NUMBER TEN

**Did the Defendants improperly delay and prevent OTB from removing its BKexpress customizations to TimeMatters from the Defendants' computer system for the purpose of gaining an improper competitive advantage?**

A. Doan Law, LLP          Yes: _____          No: __X___

B. The Doan Law Firm, LLP Yes: _____          No: __X___

If you answer this Issue "YES" as to either Defendant, proceed to Issue Number 11. If you answer this Issue "NO" as to both Defendants, proceed to Issue Number 12.

## ISSUE NUMBER ELEVEN

In what amount has OTB been injured by the Defendants' improper delay and prevention?

$_____

(not answered)

## ISSUE NUMBER TWELVE

Did the Defendants willfully and purposefully breach the Licensing Agreement by improperly using the BKexpress customizations to TimeMatters for the purpose of gaining a competitive advantage?

A.  Doan Law, LLP            Yes: __X__            No: _____

B.  The Doan Law Firm, LLP Yes: _____            No: __X__

## ISSUE NUMBER THIRTEEN

Did the Defendants improperly and/or without authorization copy or use any of OTB's confidential information for the purpose of gaining a competitive advantage?

A.  Doan Law, LLP            Yes: __X__            No: _____

B.  The Doan Law Firm, LLP Yes: _____            No: __X__

If you answer this Issue "YES" as to either Defendant, proceed to Issue Number 14. If you answer this Issue "NO" as to both Defendants, proceed to Issue Number 15.

## ISSUE NUMBER FOURTEEN

If you answered "Yes" to the previous issue, in what amount has OTB been injured by the Defendants' improper and/or unauthorized copying or use of OTB's confidential information for the purpose of gaining a competitive advantage?

$_____10,000.00_____

## ISSUE NUMBER FIFTEEN

Did OTB improperly acquire the SQL script for an improper competitive purpose?

Yes: _____          No: __X___

If you answer this Issue "YES," proceed to Issue Number 16.  If you answer this Issue "NO," proceed to Issue Number 17.

## ISSUE NUMBER SIXTEEN

In what amount have the Defendants been injured by OTB's improper acquisition of the SQL script for an improper competitive purpose?

$_____

(not answered)

## ISSUE NUMBER SEVENTEEN

Did OTB improperly use the SQL script for an improper competitive purpose?

If you answer this Issue "YES," proceed to Issue Number 18.  If you answer this Issue "NO," then you have completed your answers.

Yes: _____          No: __X___

## ISSUE NUMBER EIGHTEEN

In what amount have the Defendants been injured by OTB's improper use of the SQL script for an improper competitive purpose?

$_____

(not answered)

{16}    The court entered Judgment on June 6, 2014. The court there found and now reiterates its conclusion that the jury's verdict as to Issues 13 and 14 support a finding that Doan Law engaged in an unfair and deceptive trade practice that injured OTB.

{17}    The present motions followed and are separately considered below.

## I.    Defense Counsel's Motion to Withdraw

{18}    This Motion is made with Plaintiff's consent and is unopposed by Defendants after their notice of the Motion.

{19}    Defense counsel previously moved to withdraw but withdrew the motion.  Counsel then moved to withdraw on the eve of trial.  The court denied the motion due to timing.  In so doing, it recognized that counsel was likely required to proceed even though it knew the Doan Defendants had not paid outstanding statements and would not likely make current payments going forward.

{20}    Counsel tried the case diligently and secured favorable verdicts for both Defendants on several issues and for Doan Law Firm on all issues submitted against it.

{21}    Counsel then made and briefed appropriate post-trial motions and responded to Plaintiff's motions before renewing its motion to withdraw.

{22}    The court finds that the Motion is supported by good cause and is meritorious.  It is therefore GRANTED.  Sands Anderson P.C. is relieved of further responsibility or representation in this action.

{23}    Defendants are reminded that each is a corporate entity that is not entitled to represent itself.

## II.    Defendants' Motion for Judgment Notwithstanding Verdict or for a New Trial, and Motion to Amend Judgment

{24}    This Motion includes these separate assertions: (1) the court's instructions were improper and confusing; (2) the jury's verdict is inconsistent; and

(3) the court's Judgment against Doan Law Firm is improper because there is no jury verdict to support it. Neither assertion has merit.

{25} Throughout the pre-trial and trial processes, the court gave the Parties ample opportunity to frame the jury issues and the jury instructions. Defendants did not object to the verdict sheet or the jury instructions. Their present arguments are barred as untimely. The court further concludes, in any event, that they are without merit, as the issues and jury instructions were proper.

{26} The court finds that the jury's verdict is not inconsistent. The court had, by a prior ruling, determined that Doan Law, as licensee, breached Section 8(ii) of its Licensing Agreement with Plaintiff but left open the issue of damages that the jury should award as to that breach. The court submitted the issue of damages for this breach solely against Doan Law. There was adequate evidence upon which the jury determined the damages to be awarded against Doan Law because of its breach.

{27} The evidence also supported, and the jury found, that Doan Law separately breached Section 3 of the Licensing Agreement. Again, this issue was submitted only against Doan Law as a party to the Licensing Agreement. The jury further found that the breach was willful, purposeful, and for the purpose of gaining a competitive advantage. It first awarded nominal damages and then further awarded damages flowing from the willful and purposeful breach intended to achieve a competitive advantage. These findings and awards are appropriate, consistent, supported by the evidence, and neither illogical nor impossible. They were not rendered inconsistent simply because the jury did not also find that Defendants had misappropriated OTB's trade secrets.

{28} The court's Judgment as against Doan Law Firm does not derive from the jury's verdict. It implements only the sanctions the court entered by its July 10, 2013 Order. The obligation to pay those sanctions was in no respect dependent on the jury's verdict. The sanctions were properly against Doan Law and Doan Law Firm jointly and severally because each was, at the time of the sanctions, a party

actively prosecuting claims and subject to discovery obligations with which they did not comply.

{29} For the above reasons, and in the court's discretion, Defendants' Motion for Judgment Notwithstanding Verdict or for a New Trial, and Motion to Amend Judgment is DENIED.

### III. Plaintiff's Motion for Additional Injunctive Relief

{30} Prior to Judgment, the court was generally aware that the Parties had entered some form of agreement in lieu of a preliminary injunction. The court was not then aware of the specifics of that agreement, or whether the court's Judgment would affect it. Accordingly, when entering Judgment, the court left open whether it should or would provide additional injunctive relief. Having now reviewed the Parties' agreement and the respective filings, the court concludes that no further injunctive relief is appropriate.

{31} The jury did not find any trade secret misappropriation that would support an injunction. The jury did find a breach of contract through the improper use of confidential information. However, the Parties' private agreement restricting Defendants' activities has been in place in excess of four years and Plaintiff has not shown sufficient likelihood of future harm for which there is no adequate legal remedy. Nor has Plaintiff demonstrated any other basis for further court-imposed injunctive relief.

{32} For those reasons, and in the court's discretion, Plaintiff's Motion for Additional Injunctive Relief is DENIED.

### IV. Plaintiff's Request for Attorneys' Fees

{33} Plaintiff has requested fees in accordance with the court's Judgment and has submitted its supporting invoices and affidavits. The court must now determine the amount of a reasonable fee.

{34} A trial court has discretion to award attorneys' fees when a party has "willfully engaged in [an unfair or deceptive] act or practice, and there was an

unwarranted refusal by such party to fully resolve the matter . . . ." N.C. Gen. Stat. § 75-16.1 (2013); *Blankenship v. Town & Country Ford, Inc.*, 174 N.C. App. 764, 771, 622 S.E.2d 638, 643 (2005) (quoting N.C. Gen. Stat. § 75-16.1). The jury found that Doan Law willfully and purposefully breached the Licensing Agreement. The court then concluded that the breach was accompanied by aggravated circumstances. The contract itself does not include any exclusive means for determining damages flowing from the breach. Doan Law engaged in an unfair and deceptive trade practice. Accordingly, Plaintiff is a prevailing party entitled to recover reasonable attorneys' fees pursuant to Section 75-16.1.

{35} Doan Law was unreasonable and unwarranted in refusing to fully resolve the matter. This conclusion is supported by the following facts.

{36} The Parties reached an early tentative agreement whereby all claims would be resolved by payment of $7,500 plus an injunction that would restrain Defendants from competing with OTB in developing or selling time management software for bankruptcy attorneys. Doan Law contends that it never intended to compete with OTB.[1] It claims that it appropriately refused the settlement because of the requested injunction's scope.

{37} The Parties engaged in substantial discovery and motion practice. The court entered partial summary judgment adverse to Doan Law as to its breach of Section 8(ii) of the Licensing Agreement.

{38} Thereafter, the court ordered the Doan Defendants to pay sanctions of $35,027.16 for discovery abuses.

{39} All Parties noted the mounting costs of the litigation. These costs could have been contained. Much of the effort counsel expended was in response to Defendants' actions.

{40} In summer 2013, Plaintiff offered and Defendants refused to settle all claims against the Doan Defendants for the payment of $7,500 plus an amount as

---

[1] The court is aware of substantial testimony that might call the assertion into question.

the court may find as damages attributable to the breach of Section 8(ii) of the Licensing Agreement.

{41}    When conducting the first pre-trial conference, the court inquired of both Parties as to whether either had a reasonable expectation of a monetary award equal to the further cost of trying the case.  Counsel indicated that there was no such expectation.  All appeared to agree that settlement might be warranted based on the cost of further proceedings.  After further securing an understanding that Plaintiff remained prepared to settle all claims for a modest economic contribution, the court undertook the unusual step of asking Chief Business Court Judge Jolly to conduct a settlement conference, for which the parties would not incur expenses in the nature required for a private mediation.  The court has carefully guarded against asking Judge Jolly to reveal any of the confidential statements made during the conference.  However, this court is aware, through the Parties, that the conference went well into the night but was unsuccessful in reaching a settlement.  The court gave the Doan Defendants no basis to assume that the court would excuse payment of sanctions it had already ordered.  Plaintiff's counsel, Mr. Sasser, has now indicated by an uncontested affidavit that the Doan Defendants made no settlement offer at the Settlement Conference.

{42}    Defendants at one point made an Offer of Judgment for a total payment of $1,500.  They never tendered payment of the court-imposed sanctions.  The jury granted an award ten times greater than the Offer of Judgment for Doan Law's breach of contract which the court had already adjudicated.  The jury then granted Plaintiff further monetary relief against Doan Law on other claims.  Doan Law had no reasonable basis to believe its liability could be determined to be equal to or less than $1,500.

{43}    During the course of the trial, on a number of occasions, both on the record and off the record, the court advised the Parties that the case should be settled.  Among other factors favoring settlement, the Parties had no reasonable expectation of recovery on a monetary award sufficient to justify their exposure to an adverse jury finding that could lead to the court finding an unfair and deceptive

trade practice. The court assured Defendants that it would lend substantial assistance in an effort to finalize a settlement if they would agree to pay the sanctions already entered and a modest amount for the breach of contract. Defendants steadfastly refused to pay the court-imposed sanctions.

{44}    The court is advised that at some point just prior to or during trial, Defendants offered to pay Plaintiff $7,500 but conditioned the offer on the court forgiving the sanctions it had ordered. The court is further advised that this offer was later withdrawn.

{45}    Doan Law's willful refusal to resolve all matters was unwarranted and reflects no reasonable or rational consideration or acknowledgement of the minimum liability it faced.

{46}    Defendants were within their constitutional right in deciding to proceed to jury verdict. However, decisions have consequences.

{47}    Plaintiff could not force Defendants to settle. Upon Doan Law's refusal to settle, OTB was justified in efforts to prosecute its claims and to defend counterclaims against it.

{48}    OTB is entitled to recover reasonable attorneys' fees against Doan Law. The court must now determine what amount is reasonable to award.

{49}    The court is intimately familiar with the course of the litigation, having been required to write numerous substantive orders, review multiple briefs, conduct numerous hearings, and ultimately preside over a multi-day trial. The court approached its review of the supporting documentation offered with the fee request with intimate familiarity with the issues, the litigation strategies employed, and the discovery and motion practice undertaken before trial. It has an ample basis on which to opine regarding the match between the tasks at hand and the skill and experience of the attorneys addressing those tasks.

{50}    The court's task has nevertheless been a difficult one. There is no simple, tested, mathematical formula for determining a fee under these circumstances. Plaintiff succeeded on some claims but not on others. The unsuccessful and successful claims arise primarily from a common nucleus of facts,

so that efforts directed to one claim, defense, or counterclaim were at the same time directed to others, making it essentially impossible to parse day-to-day activity between claims. The requested fees far exceed the monetary recovery the jury awarded to Plaintiff. But, the comparison between the fees expended and the final monetary award, while a relevant consideration, is not conclusive. Some value must be attributed to the fact that Plaintiff achieved limitations on Defendants' further conduct by securing an early agreement that the Parties entered into in lieu of having this court rule on Plaintiff's Motion for Preliminary Injunction. Further, there is intrinsic value in the jury's finding affirming Plaintiff's claims that its product, BK*express*, embodies trade secrets over Defendants' vigorous challenge that OTB had no protectable trade secrets at all. A finding in Doan Law's favor would have subjected OTB to substantial adverse economic consequences.

{51}    The court must consider certain factors in light of the directive that any award of fees include findings with respect to (1) time and labor expended on the case; (2) complexity of the issues; (3) the length and complexity of trial; (4) each attorney's experience and ability; (5) the skill required to perform the necessary services; (6) the attorneys' hourly rates; and (7) comparable rates or fees for similar work. *McKinnon v. CV Indus., Inc.*, ___ N.C. App. ___, 745 S.E.2d 343, 351 (2013) (quoting *Shepard v. Bonita Vista Props., L.P.*, 191 N.C. App. 614, 627, 664 S.E.2d 388, 396 (2008), *aff'd per curiam*, 363 N.C. 252, 675 S.E.2d 332 (2009)). The court must consider these factors in a way that accounts for OTB's limited success. If a plaintiff brings multiple claims arising from a common nucleus of facts, and succeeds on some claims but not others, the court is not necessarily required to allocate fees between the successful and unsuccessful claims. *Morris v. Scenera Research, LLC*, ___ N.C. App. ___, 747 S.E.2d 362, 378 (2013). At the same time, where the fee requested and the success achieved are incongruous, an adjustment must be made to assure that the fee awarded is reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

{52}    "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation

multiplied by a reasonable hourly rate." *Id.* at 433. This is commonly referred to as the "lodestar" method. *See Certain v. Potter*, 330 F. Supp. 2d 576, 582 (M.D.N.C. 2004); *Byers v. Carpenter*, 1998 NCBC LEXIS 3, at *32 (N.C. Super. Ct. Jan. 30, 1998). Before determining the hours to include in the lodestar calculation, the "court . . . should exclude from this initial fee calculation hours that were not 'reasonably expended,'" including "hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. It follows that the court should, where possible, exclude time spent on matters not directly related to claims on which the prevailing party succeeded.

{53} Particularly where there is an unwarranted refusal to settle, efforts that might at first appear excessive or unreasonable to prosecute a claim may become reasonable in light of the actions by the opposing party that prompted them. *Cf. Barbee v. Atl. Marine Sales & Serv.*, 115 N.C. App. 641, 649, 446 S.E.2d 117, 122 (1994) (noting that "defendant's intractability" supported the trial court's attorneys' fees determination and affirming an award for attorneys' fees based, in part, on the length and complexity of trial).

{54} The North Carolina Court of Appeals has regularly followed *Hensley.* In its review of this court's allocation of a plaintiff's counsel fees in another case where a plaintiff succeeded on some claims but not others, the court of appeals acknowledged that "where the plaintiff achieve[s] only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Morris*, ___ N.C. App. at ___, 747 S.E.2d at 378 (quoting *Hensley*, 461 U.S. at 440).

> Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney[s'] fee[s] reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

*Id.* (quoting *Hensley*, 461 U.S. at 440).

{55} In noting that the trial court is not required to allocate fees simply because a plaintiff did not succeed on all claims, the court of appeals cited the following cases with approval: (1) *Whiteside Estates, Inc. v. Highlands Cove, LLC*, 146 N.C. App. 449, 553 S.E.2d 431 (2001), *dismissed as moot and disc. review denied*, 356 N.C. 315, 571 S.E.2d 219 (2002); (2) *Okwara v. Dillard Dep't Stores, Inc.*, 136 N.C. App. 587, 525 S.E.2d 481 (2000); (3) *Hamilton v. Memorex Telex Corp.*, 118 N.C. App. 1, 454 S.E.2d 278, *disc. review denied*, 340 N.C. 260, 456 S.E.2d 831 (1995). *Morris*, ___ N.C. App. at ___, 747 S.E.2d at 378. However, in stating that the trial court is not required to allocate fees, the Court of Appeals did not further hold that the trial court should never adjust to recognize any partial success. Indeed, *Hensley* instructs to the contrary: "[T]he most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436.

{56} Finding that an adjustment is necessary is much easier than developing the method for making that adjustment. "There is no precise rule or formula for making these determinations. The . . . court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436–37. However, the "court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." *Id.* at 437.

{57} There is no guiding North Carolina case law that has established a method to determine the reasonable relationship between success and the amount of fees requested. Noel Allen's treatise on unfair business practices cites a case in which United States District Judge Malcom Howard of the Eastern District of North Carolina undertook a similar effort in *American Agri-Brokers v. Phykitt*, No. 1:88-cv-00657 (E.D.N.C. Oct. 3, 1991). Noel Allen, *North Carolina Business Practice* § 11.05, at 11-7 (3d ed. 2014). There, Judge Howard found that the successful and unsuccessful claims arose from a common core of facts, consequently "making it difficult to divide the hours expended on a claim-by-claim basis." *Am. Agri-Brokers*, slip op. at 9. Without fully explaining how he adopted his thirty

percent discount, Judge Howard applied a "percentage reduction method" to estimate the total number of hours that went toward the litigation of successful claims, noting that "[s]eparation of Plaintiff's claims and Defendant's acts is impossible." *Id.*, slip op. at 15.

{58}     After due consideration of the case law, the court adopts the following procedure to implement *Hensley* as followed by our court of appeals.  First, the court inquires whether the fees reflected by the invoices are for services directly related to the claims upon which Plaintiff prevailed, whether they were undertaken by attorneys with the requisite and appropriate skill, and whether they were for work done with reasonable efficiency.  The court makes necessary adjustments to limit the number of hours to include in any lodestar. *See Hensley*, 461 U.S. at 434. Second, the court determines the reasonable hourly fee to apply to the remaining time to be included in calculating an award. *See id.* at 433.  Third, the court applies a percentage adjustment to account for Plaintiff's degree of success. *Hensley*, 461 U.S. at 436–37 ("The district court may . . . simply reduce the award to account for the limited success.").  Here the court concludes the percentage reduction should be fifty percent.

{59}     The court determined that this method was best implemented on an invoice-by-invoice basis.  On the various invoices, the court eliminated from the fee award certain services not directly related to the claims on which Plaintiff succeeded, including a portion of prosecuting claims that the court found were preempted by the Copyright Act, efforts seeking to compel arbitration, efforts for which the court has already afforded relief through its earlier sanctions, efforts in securing sanctions against Rivera and LogicBit which should not be charged against the Doan Defendants, and work in developing Mr. Shortreed as an expert witness who was later withdrawn.

{60}     The court was able to judge efficiencies because it is familiar with the details of the pre-trial procedures.  A review of the supporting invoices reflects that OTB's counsel made efforts to be efficient.  For the most part, the invoices demonstrate that OTB's counsel engaged in what has become the all-too-common

practice in today's litigation environment of having multiple lawyers attend a task where a single attorney might suffice. However, particularly in complex cases, there are certain occasions where it is necessary, and indeed efficient, for multiple attorneys to participate, for example, in client or attorney conferences where core theories or strategies are developed. Nevertheless, the court's invoice review led it to conclude that some adjustments should be made for inefficiencies. For example, Plaintiff had three attorneys attend the trial. Even though each attorney actively participated, the court believes that the two senior attorneys, Messrs. Sasser and Meyers, could have handled the trial. The court then excluded Ms. Marquis Segal's trial time. Doing so is no reflection on the quality of her participation, as she contributed well. Further, because of the case's long duration, the associate support attorney changed during the progress of the case, requiring transition and duplication. The court made appropriate adjustments to account for this.

{61} The court considered the reasonableness of the rates charged. The court is aware of fees charged in similarly complex litigation by attorneys of similar skill and experience. This awareness comes, in part, from the court's own experience as a litigator in cases of this type, its review of fee petitions submitted in other cases, and its general familiarity with the range of hourly rates charged in Raleigh and other North Carolina municipalities for complex litigation.

{62} The court finds that the hourly rates Plaintiff's counsel charged were fair and reasonable and within the range charged for similar matters by similarly skilled and experienced attorneys and legal assistants in North Carolina. This case was complex and involved complicated factual and legal issues, demanding substantial skill from counsel. Plaintiff's counsel exhibited such skill and familiarity with trade secret litigation and the technology at issue in this case. Mr. Sasser, Mr. Meyers, and Ms. Marquis Segal each charged less than their standard hourly rates. (Sasser Aff. ¶ 25.)

{63} The court concludes that the rates represented on Plaintiff's counsel invoices are reasonable and should be followed in calculating the attorneys' fees to

be awarded.  In particular, the court finds the following rates are reasonable and appropriate for this litigation:

| | |
|---|---|
| Jon Sasser, partner | $495 |
| Scott Meyers, associate | $260 |
| Lenor Marquis Segal, associate | $250 |
| Grant Garber, associate | $220 |
| Philip Holroyd, associate | $180 |
| Legal Assistants | $130 |

{64}    After eliminating inefficient time from the lodestar, the court applied a fifty percent reduction to the value of remaining time calculations on the basis of those hourly rates in order to achieve a reasonable and fair balance between the claims on which Plaintiff succeeded and those on which it did not.  The court finds that there is no other meaningful way to implement the directive of *Hensley* as our court of appeals has followed it other than to apply a general percentage adjustment.

{65}    It would be unfair to impose any greater discount to account for the fact that Plaintiff secured a verdict against Doan Law but not against Doan Law Firm.  There was no significant additional effort necessary because both were joined as defendants, and dropping the claims against Doan Law Firm would not have saved significant resources.  Further, both Doan Law and Doan Law Firm pursued counterclaims against OTB.

{66}    The fee award does not include any time spent on the application for fees.

{67}    Through its review of invoices and application of reasonable rates to reasonable efforts by the appropriately skilled and experienced personnel, the court has made the findings dictated by *McKinnon*, ___ N.C. App. at ___, 745 S.E.2d at 351; *Shepard*, 191 N.C. App. at 626, 664 S.E.2d at 396; and similar cases.

{68}    Exhibit A reflects the deductions or adjustments the court made on an invoice-by-invoice basis.  For each invoice, the court first eliminated time that

should be excluded either as unrelated to claims on which Plaintiff succeeded or for inefficiency. It then applied the general percentage reduction of fifty percent. In some instances, the court discounted associate time by seventy-five percent, rather than fifty percent, to eliminate inefficiency of transfer.

{69} The total amount of fees requested is $1,162,895.00. The court determines that the lodestar is $935,655.26. After applying the fifty percent reduction, the court concludes that the reasonable award is $467,827.63.

{70} The court has considered Doan Law's arguments that OTB is not entitled to recover attorneys' fees because of Robert McNeill's professional licensing issues. The court finds the argument unpersuasive.

## CONCLUSION

{70} For the foregoing reasons:

1. The Motion to Withdraw by Defense Counsel Sands Anderson P.C. is GRANTED;

2. Defendants' Motion for Judgment Notwithstanding Verdict or for a New Trial, and Motion to Amend Judgment is DENIED;

3. Plaintiff's Motion for Additional Injunctive Relief is DENIED;

4. Plaintiff shall recover from Doan Law LLP attorneys' fees in the amount of $467,827.63, together with interest at the legal rate until paid;

5. The court's Judgment entered June 6, 2014, is hereby incorporated and is FINAL in all respects.

IT IS SO ORDERED this 29th day of August, 2014.

# EXHIBIT A

| Invoice Date | Amount Billed | Fee Award | Comments |
|---|---|---|---|
| 05/10/2010 | $4,784.50 | $2,392.25 | 50% Reduction |
| 06/10/2010 | $87,775.50 | $43,887.75 | 50% Reduction |
| 08/27/2010 | $20,786.00 | $10,393.00 | 50% Reduction |
| 09/29/2020 | $17,347.50 | $6,081.75 | 50% Reduction – Sasser time; 75% Reduction for Holyrod time – change in associate efficiency. |
| 10/26/2010 | $8,509.50 | $3,030.75 | 50% Reduction – Sasser time; 75% Reduction for Holyrod time – change in associate efficiency. |
| 11/22/2010 | $11,405.50 | $3,574.25 | 50% Reduction – Sasser and legal assistant time; 75% Reduction for Holyrod time – change in associate efficiency. |
| 12/27/2010 | $5,016.00 | $1,617.00 | 50% Reduction – Sasser and legal assistant time; 75% Reduction for Holyrod time – change in associate efficiency. |
| 01/20/2011 | $7,956.00 | $3,276.00 | 50% Reduction – Sasser and legal assistant time; 75% Reduction for Holyrod time – change in associate efficiency. |
| 02/08/2011 | $9,792.00 | $0.00 | Exclude time on effort to compel arbitration. |
| 03/14/2011 | $1,417.50 | $0.00 | Exclude time on effort to compel arbitration. |
| 04/06/2011 | $399.00 | $199.50 | 50% Reduction |
| 05/26/2011 | $18.00 | $0.00 | Exclude time for status report email – not compensable. |
| 06/14/2011 | $23,850.00 | $668.25 | Exclude time on effort to compel arbitration and associated time; 50% Reduction – remaining Sasser time. |
| 07/06/2011 | $1,800.00 | $648.00 | 50% Reduction – Sasser time; 75% Reduction for Holyrod time – change in associate efficiency. |
| 08/26/2011 | $24,010.50 | $12,005.25 | 50% Reduction |
| 09/26/2011 | $21,101.50 | $7,548.75 | 50% Reduction – Sasser time; Exclude associate time corresponding to transition from Holyrod to Garber. |
| 11/18/2011 | $9,647.00 | $8,203.00 | 50% Reduction – Associate time; allow 100% Sasser time. |
| 01/17/2012 | $34,573.50 | $16,835.63 | 50% Reduction – Sasser and Garber time; 75% Reduction for remaining time. |
| 02/14/2012 | $94,902.50 | $47,194.50 | 50% Reduction – Sasser, Garber, and Meyers time; 75% Reduction for remaining time. |
| 03/15/2012 | $23,540.50 | $11,770.25 | 50% Reduction |
| 04/19/2012 | $12,164.00 | $6,082.00 | 50% Reduction |
| 05/18/2012 | $35,569.00 | $17,784.50 | 50% Reduction |
| 06/18/2012 | $11,429.00 | $5,714.50 | 50% Reduction |
| 07/26/2012 | $13,955.00 | $6,977.50 | 50% Reduction |
| 08/29/2012 | $22,168.50 | $11,084.25 | 50% Reduction |
| 09/21/2012 | $15,221.00 | $3,805.25 | Exclude time corresponding to withdrawn expert Shortreed; 50% Reduction of all remaining time. |
| 10/12/2012 | $2,794.00 | $1,397.00 | 50% Reduction |
| 11/21/2012 | $6,610.00 | $3,305.00 | 50% Reduction |
| 12/14/2012 | $6,346.00 | $3,173.00 | 50% Reduction |
| 01/16/2013 | $10,859.00 | $5,429.50 | 50% Reduction |

| | | | |
|---|---|---|---|
| 02/15/2013 | $17,030.00 | $6,099.00 | Exclude associate time corresponding to transition from Garber to Marquis-Segal; 50% Reduction for all remaining time. |
| 03/13/2013 | $2,356.50 | $500.00 | Exclude Marquis-Segal time for orientation to file; 50% Reduction for all remaining time. |
| 04/17/2013 | $22,385.00 | $9.830.00 | Exclude Marquis-Segal time – duplicative; 50% Reduction for all remaining time. |
| 05/13/2013 | $50,459.00 | $10,229.50 | Exclude $30,000 corresponding to efforts reflected in court's earlier sanctions award; 50% reduction for all remaining time. |
| 06/06/2013 | $57,120.50 | $27,022.75 | Exclude Marquis-Segal time at hearing – third attorney at hearing; 50% Reduction for all remaining time. |
| 07/16/2013 | $11,572.50 | $3,250.00 | Exclude $5,000 corresponding to earlier sanctions award; 50% reduction for all remaining time. |
| 08/16/2013 | $15,048.00 | $0.00 | Exclude time corresponding to withdrawn expert. |
| 09/20/2013 | $11,623.00 | $4,000.00 | Exclude time corresponding to withdrawn expert; Exclude Marquis-Segal time – duplicative; 50% Reduction for all remaining time. |
| 10/17/2013 | $52,482.00 | $23,750.00 | Exclude $5,000 for participation of third attorney; 50% Reduction for all remaining time. |
| 11/07/2013 | $50,619.00 | $23,309.50 | 50% Reduction |
| 12/16/2013 | $21,270.00 | $5,000.00 | Exclude fees related to discovery as to sanctions order related to other defendants; 50% Reduction for all remaining time. |
| 01/21/2014 | $14,344.00 | $0.00 | Exclude fees for pursuit of sanctions against other defendants. |
| 02/19/2014 | $10,552.00 | $0.00 | Exclude fees for pursuit of sanctions against other defendants. |
| 03/26/2014 | $23,466.50 | $5,000.00 | Exclude fees for pursuit of sanctions against other defendants (approximately $11,000.00); Exclude duplicative Marquis-Segal time (approximately $2,500; 50% Reduction for all remaining time. |
| 04/25/2014 | $17.997.50 | $8,998.75 | 50% Reduction |
| 06/12/2014 | $238,794.50 | $94,759.75 | Exclude Marquis-Segal trial participation; 50% Reduction for remaining time. |